**PRUDENTIAL INS. CO. OF AMERICA v. LAND ESTATES, Inc.**

**Application of MUTUAL LIFE INS. CO. OF NEW YORK.**

**MUTUAL LIFE INS. CO. OF NEW YORK v. KAPROW et al.**

**No. 337.**

Circuit Court of Appeals, Second Circuit.

July 29, 1942.

Louis W. Dawson, of New York City (Herbert A. West and Rodney A. Curtiss, both of New York City, of counsel), for appellant Mutual Life Ins. Co. of New York.

Barnet Kaprow, Edwin A. Tennant, Jr., and Thomas Keogh, all of New York City, Creditors' Committee of Land Estates, Inc., pro se, appellees.

Kramer & Kaprow, of New York City, for appellee trustees of Series B-K.

Edward F. Keenan, of New York City, for appellee Superintendent of Insurance of State of New York.

Wagner, Quillinan, Wagner & Tennant, of New York City, for appellee trustees of Series F-1.

Hetkin, Rubin & Hetkin, of New York City, for appellee trustees of Series B-1.

Abraham J. Halprin, of New York City, for appellee trustees of Series C-3 and Q-1.

Adrian P. Burke, of New York City, for appellee trustee of Land Estates, Inc.

Greenbaum, Wolff & Ernst, of New York City, for appellee receiver of Land Estates, Inc.

Clark & Reynolds, of New York City, for appellee Prudential Ins. Co. of America.

Thomas Keogh, of New York City, for appellee trustees of Series Q.

Eugene J. Morris, of New York City, for appellee trustees of Series C-2.

Meyer Boskey, of New York City, for appellee trustees of Series CW-1.

Olin Potter Geer, of New York City, for appellee trustee of Series A-2.

Charles L. Meckenberg, of New York City, for appellee trustee of Series D.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The present suit was begun on August 18, 1934, as a creditors' bill to conserve the assets of the defendant Land Estates, Inc. This is an appeal from an order of the District Court denying motions of the Mutual Life Insurance Company of New York (hereafter called Mutual) for leave to file four proofs of claim nunc pro tunc, as of May 22, 1934, which aggregated $2,716,148.60. A bar order had been returned fixing May 22, 1934, as the last day for filing. Mutual never sought to file proof of its claim prior to making the above motions, which the court denied because of laches.

The claims were evidenced by bonds or extension agreements and were secured by mortgages covering premises in the City of New York. Mutual alleges that it so long neglected to file proofs of its claim because it believed that the value of the mortgages securing them was greater than the amount of the claims. It erroneously inferred that it had no provable claims because, it thought, the value of the mortgages would be deducted from the face of the claims. It argues that because of this mistake of law the proper officers of Mutual did not seasonably file any proofs. On a prior appeal, reported at 110 F.2d 617, we held that the equity rule, which allows proof for the full amount of the claims, was applicable to the present suit rather than the bankruptcy rule, which requires the value of the security to be deducted. But although our decision was rendered on March 18, 1940, this motion was not made until March 24, 1942.

On December 11, 1940, the District Court made a decree for the sale of the tangible and intangible assets of Land Estates, subject to all outstanding mortgages thereon, at an upset price of $647,913.23. By this decree it confirmed a plan of liquidation dated October 31, 1938, declared it fair and equitable and also provided that the receiver, prior to the delivery to the purchaser of the instruments of transfer should pay each unsecured creditor not assenting to the plan and to each secured creditor not assenting 25% upon their respective claims.

The plan was provided for in an agreement made under date of October 31, 1938, between Land Estates; its receiver; Louis H. Pink, Superintendent of Insurance, Liquidator of New York Title and Mortgage Company; a Creditors' Committee; and the creditors of Land Estates. It provided that the creditors who assented to it should assign their claims to the Creditors' Committee, that the Committee should apply to the District Court for an order authorizing the sale of the assets of Land Estates, Inc., which are in receivership, and should also request Land Estates to apply to the New York Supreme Court for an order authorizing Land Estates to sell all assets which were not subject to the jurisdiction of the receivership court upon terms to be approved by the State Court. The Creditors' Committee were to have power to purchase the assets for the benefit of assenting creditors. If the Creditors' Committee should be the successful bidder, it was to transfer the assets purchased to a nominee who was to be a trustee appointed by the New York Supreme Court. The Committee was not to be required to pay the price in cash but might apply the moneys which would be due and owing to it by the receiver as dividends on the claims which it held, on account of the purchase price. The agreement also provided that the Liquidator of New York Title and Mortgage Company should withdraw all claims against Land Estates, and that the Creditors' Committee should consent to the withdrawal by the receiver of all claims of Land Estates against New York Title and Mortgage Company. It was further provided that whenever, after the approval of the plan, the Committee deemed that a sufficient percentage of the creditors had assented to the plan to render its consummation feasible, the Committee should petition the New York Supreme Court for an order declaring the plan operative, but only in case not less than 75% of the amount of the claims of all general creditors should have assented thereto. The Creditors' Committee was to have authority to represent the assenting creditors and to fix the time for the filing of assents to the agreement, and might in its discretion extend the time to file such assents.

As already stated, the sale was ordered by decree of the District Court dated

December 11, 1940. It was held on April 30, 1941, and confirmed on May 29, 1941. The Creditors' Committee bid in the assets at the upset price. The New York Supreme Court appointed the trustee on February 18, 1942, and on March 2, 1942, he turned over to the receiver the purchase price, by delivering for cancellation claims due the assenting creditors from Land Estates.

It is unnecessary to discuss the power of the District Court to allow Mutual to file its claims if the only objection had been delay in presenting them. Nor need we discuss the contention that Mutual's security was so ample that there would have been no deficiency if it had been applied. In our opinion, Mutual's applications were properly denied because it would have substantially prejudiced the rights of other creditors to grant them.

Under the plan assenting creditors adopted a process of slow liquidation by a trustee who would sell the property as opportunity offered in the hope that they would thus realize more than by a sale to the highest bidder under which they would retain no interest in the property. They agreed to pay a flat 25% upon the claims of non-assenting creditors. To do this they paid an upset price at the sale amounting to $165,264.41 more than the appraised value for the net tangible assets shown in the receiver's petition. They did not proceed with the plan until after the limitation of time fixed in the bar order had expired and the proofs of claim had been filed. We cannot know that they would have gone to the trouble and expense of these steps if they had supposed that some 60% of the fruits of their work was to go to Mutual.

In addition to this, New York Title and Mortgage Company, of which Land Estates was a subsidiary, had guaranteed certain mortgage certificates in Land Estates. The claims of these guaranties were reduced by the amounts which their holders expected to receive from Land Estates, and on this basis a settlement with the Liquidator of New York Title was authorized by both the District Court and the Supreme Court of New York. Intervention by Mutual as a creditor would reduce the actual amount received by these guaranteed creditors from Land Estates, after their claims on their guaranties have been finally settled.

It is evident that owing to its belief that it had abundant security or its mistake about the rule applicable to proof of claims in an equity suit, Mutual has for years delayed filing its proofs, or even applying for an extension of time in which to do so. While all this went on the creditors of Land Estates were obliged to choose between a prompt sale of the tangible assets and the trouble, cost, risk and delay of an attempt at a long-term liquidation which might be more profitable than a prompt sale. In doing this, all the creditors have gone to substantial expense and paid a higher purchase price than the current appraised value of the assets, and many of them have adjusted their claims against the guarantor upon a basis different from that which would have been used had they been informed of the amount of claims outstanding. We hold that after the time for receiving claims had expired under the bar order, and the plan prepared upon the basis of the filed claims had been approved and actually carried into effect, it would be unjust either to allow Mutual to prove its claims under the plan or to modify the plan, were such a step possible.

The order is accordingly affirmed.